UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| SAMUEL STOKES,<br><br>           Plaintiff,<br><br>      v.<br><br>LT. WILLIAMS, et al.,<br><br>           Defendants. | CAUSE NO.: 3:19-CV-939-JD-MGG |

OPINION AND ORDER

Samuel Stokes, a prisoner without a lawyer, filed a complaint under 42 U.S.C. § 1983. Pursuant to 28 U.S.C. § 1915A, the court must review the complaint and dismiss it if the action is frivolous or malicious, fails to state a claim, or seeks monetary relief against a defendant who is immune from such relief. The court must bear in mind that "[a] document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers . . ." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted).

The complaint is difficult to parse, but giving it liberal construction, Stokes complains about events occurring on or about October 14, 2019. He claims that C.O. Edwards (first name unknown) kept him up all night for two nights in a row talking to a group of other inmates. He alleges that she knew these inmates were "under the influence of drugs" but did not "write them up." After Stokes complained about the noise, C.O. Edwards allegedly told the other inmates that Stokes "was the reason they

couldn't talk to her all night." It can be discerned that Stokes asked C.O. Edwards to be transferred to a different dormitory, and that she then took him to see the nurse. The nurse asked him if he was requesting placement in protective custody, but he stated that he was not, because it would interfere with his work release. He asked again, however, to be transferred to another dormitory. The nurse asked him about "wrongdoings on the pod," to which he responded that he did not know anything.

C.O. Potts (first name unknown) then placed him in a holding cell, where he stayed from approximately 6 p.m. until sometime the following afternoon. During this time he claims he was denied food and regular access to the bathroom. Officers eventually came to remove him from the holding cell, but he lied down on the floor and tried to "wrestle" out of the handcuffs they had placed on him. The officers told him that if he continued resisting, he would be "taken to D. Pod . . . to live with some real killers." He was further warned that he would be pepper-sprayed if he continued with his actions, and he then put the handcuffs back on. Based on these events, he requests 10 million dollars in monetary damages, "outside work jobs" for offenders, and other forms of relief.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege "(1) that defendants deprived him of a federal constitutional right; and (2) that the defendants acted under color of state law." *Savory v. Lyons*, 469 F.3d 667, 670 (7th Cir. 2006). The Eighth Amendment imposes a duty on prison officials "to take reasonable measures to guarantee the safety of inmates" and to "protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994). However, "prisons are

2

dangerous places," as "[i]nmates get there by violent acts, and many prisoners have a propensity to commit more." *Grieveson v. Anderson*, 538 F.3d 763, 777 (7th Cir. 2008). Therefore, a failure-to-protect claim cannot be predicated "merely on knowledge of general risks of violence in a detention facility." *Brown v. Budz*, 398 F.3d 904, 913 (7th Cir. 2005). Here, Stokes alleges that C.O. Edwards told other inmates that he had complained about them making noise. While certainly unprofessional, there is nothing in the complaint to indicate that the inmates attacked him as a result, or that C.O. Edwards' actions otherwise caused him injury. He states generally that there were attacks on other inmates in the pod, which was concerning to him, but he does not describe any attack involving him and/or the other inmates about whom he had complained. Additionally, it is apparent from the complaint that prison staff asked Stokes if he wanted to be placed in protective custody, but he declined. His allegations do not state a plausible failure-to-protect claim.

To the extent he is seeking to raise a claim about his request for an elective transfer to another dormitory, courts must afford prison officials "wide-ranging deference" in the day-to-day operations of a correctional facility. *Bell v. Wolfish*, 441 U.S. 520, 547 (1979). An inmate has no constitutional right to be housed in a particular correctional facility, or in the location of his choosing. *See Meachum v. Fano*, 427 U.S. 215, 224 (1976); *Antonelli v. Sheahan*, 81 F.3d 1422, 1431 (7th Cir. 1996). Stokes has not alleged a plausible constitutional claim in connection with these allegations.

Stokes may also be trying to assert an excessive force claim against the two officers who escorted him from the holding cell. The "core requirement" for an

3

excessive force claim is that the defendant "used force not in a good-faith effort to maintain or restore discipline, but maliciously and sadistically to cause harm." *Hendrickson v. Cooper*, 589 F.3d 887, 890 (7th Cir. 2009) (citation omitted). Several factors guide the inquiry of whether an officer's use of force was legitimate or malicious, including the need for an application of force, the amount of force used, and the extent of the injury suffered by the prisoner. *Id.* Here, Stokes acknowledges that while he was being taken out of the holding cell, he lied down on the floor and tried to "wrestle" out of his handcuffs. Such conduct posed an obvious threat to the safety of staff and to order within the facility. The officers warned Stokes that additional force would be used if he did not stop "fighting" them. He became compliant and, as far as the complaint reveals, the incident ended. He does not describe any injuries as a result of this incident. It cannot be plausibly inferred from his allegations that the officers used force maliciously or sadistically to cause harm. Although the officers' comments about housing him with "killers" may have been unprofessional, rude language or verbal harassment does not violate the Constitution.

  Finally, Stokes alleges that he was held in a holding cell from approximately 6 p.m. until the next afternoon---approximately 18 hours---without being given food or regular access to a restroom. The Eighth Amendment entitles an inmate to the "minimal civilized measure of life's necessities." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). This includes adequate food and sanitation. *Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009); *Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006). However, the Eighth Amendment does not mandate "comfortable prisons," *Rhodes v. Chapman*, 452 U.S. 337,

4

349 (1981), and so to state an Eighth Amendment violation, an inmate must allege an objectively serious injury, and that prison officials were deliberately indifferent to the risk of harm. *Farmer*, 511 U.S. at 834; *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005). While this experience was no doubt unpleasant for Stokes, it was brief, and there is no indication that the missed meals or lack of regular access to a bathroom over this period caused him any lasting harm. *See Craft v. Mann*, 265 F. Supp. 2d 970, 972 (N.D. Ind. 2003) (observing that "conditions that would violate the Eighth Amendment over a long period of time may not constitute a constitutional violation if imposed for short periods of time"). Nor are there any allegations in the complaint from which it can be plausibly inferred that a named defendant deliberately turned a blind eye to Stokes's health or safety during this incident. He has not stated a plausible constitutional claim in connection with these allegations.

"The usual standard in civil cases is to allow defective pleadings to be corrected, especially in early stages, at least where amendment would not be futile." *Abu-Shawish v. United States*, 898 F.3d 726, 738 (7th Cir. 2018). In the interest of justice, the court will allow Stokes to amend his complaint if, after reviewing this court's order, he believes that he can plausibly state a claim. *See Luevano v. Wal-Mart*, 722 F.3d 1014 (7th Cir. 2013). If he decides to file an amended complaint, he should explain in his own words what happened, when it happened, where it happened, who was involved, and how he was personally injured by the events that transpired, providing as much detail as possible.

For these reasons, the Court:

(1) DIRECTS the clerk to put this case number on a blank Prisoner Complaint Form and send it to the plaintiff;

(2) GRANTS the plaintiff until **July 31, 2020**, to file an amended complaint if he so wishes; and

(3) CAUTIONS him that if he does not respond by that deadline, this case will be dismissed pursuant to 28 U.S.C. § 1915A, because the current complaint does not state a claim upon which relief can be granted.

SO ORDERED on June 18, 2020

/s/JON E. DEGUILIO
CHIEF JUDGE
UNITED STATES DISTRICT COURT

6